## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## CLARKSBURG

**RICHARD ALLEN WILSON,**

      **Plaintiff,**

v.
                                **Civil Action No.: 1:13-CV-258**
                                **(JUDGE KEELEY)**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

      **Defendant.**

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On December 5, 2013, Richard Allen Wilson ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles XVI and II, respectively, of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, 1381-1383f. The matter is awaiting decision on cross motions for summary judgment and has been referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); L.R. Civ. P. 9.02.

### II. PROCEDURAL HISTORY

On December 17, 2010, Plaintiff protectively filed his applications for SSI and DIB, alleging disability that began on December 4, 2008 due to neck problems, degenerative disc disease and depression. (R. 138). The claims were initially denied on March 28, 2011 and denied again upon reconsideration on June 15, 2011 (R. 86, 93). On August 12, 2011, Plaintiff filed a

written request for a hearing (R. 100-01), which was held before United States Administrative Law Judge ("ALJ") Karl Alexander on July 12, 2012 in Morgantown, West Virginia. (R. 36-53). Plaintiff, represented by counsel Jan Dils, Esq., appeared and testified, as did Eugene A. Czuczman, an impartial vocational expert. (R. 37). On July 27, 2012, the ALJ issued an unfavorable decision to Plaintiff, finding that she was not disabled within the meaning of the Social Security Act. (R. 7-24). On October 10, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 1-3).

## III.     STATEMENT OF FACTS

### A.  Personal History

Plaintiff was born on September 15, 1971, and was thirty-nine (39) years old at the time he filed his DBI and SSI applications. (R. 138, 142). He completed high school as well as specialized training as an auto mechanic. (R. 266, 267). Plaintiff has prior work experience as a delivery driver, ironworker, a concrete laborer and a construction worker. (R. 48-49). Plaintiff is single and has no children. (R. 138-39).

### B.  Medical History

Plaintiff alleges disability based on severe pain and numbness in his neck through his left arm (R. 192), degenerative disc disease and mental impairments, including social anxiety and depression (R. 169).

Plaintiff reported experiencing neck and shoulder pain, as well as numbness and tingling through his arm and fingers beginning in late 2008 and early 2009. On February 26, 2009, Plaintiff received x-rays of his cervical spine, which showed degenerative changes at C6-C7 with disk space narrowing and endplate sclerosis and narrowing of the left neural foramen, mild. (R.258). Plaintiff's left shoulder x-rays were normal. (R. 257).

Plaintiff received primary care treatment from Dr. William R. Minor, D.O. with Minor Family Practice, for his neck pain and degenerative disc changes. Plaintiff had appointments on February 19, 2009 (R. 245-47), March 19, 2009 (R. 243), November 16, 2010 (R. 241), January 5, 2011(R 239), during which he reported neck and shoulder pain, as well as numbness and tingling. Plaintiff was eventually prescribed Darvocet and the Lidoderm patch for pain. (R. 242).

Plaintiff also saw specialists regarding his spinal condition. On May 12, 2009, Plaintiff presented to the Spine Center at the WVU Department of Orthopaedics. (R. 249). Plaintiff was diagnosed with degenerative disk disease of the cervical spine, cervicalgia, neck sprain and carpal tunnel syndrome of the left with positive Phalen sign, myofascial syndrome, and c-spine tension headaches. (Id.).

In regard to his mental health, Plaintiff started receiving treatment for his anxiety and depression at Valley Mental Health in 2007. (R. 297-98). Plaintiff had appointments on May 2, 2007 (R. 297), June 28, 2007 (R. 299), November 30, 2007 (R. 304), January 8, 2008 (R. 306), January 16, 2009 (R. 308), March 12, 2009 (R. 302), June 3, 2011 (R. 300), July 1, 2009 (R. 312), November 6, 2009 (R. 311) and August 31, 2010 (R. 310). During this appointments, Plaintiff received treatment for anxiety disorder, not otherwise specified; obsessive compulsive disorder; alcohol dependence, in full sustained remission; and psychosocial stressors including chronic mental illness and poor social support. His medication included Celexa, Valium and Propranolol. Plaintiff's GAF scores during this time ranged from 65 to 80.  At his most recent appointment on January 17, 2011, Plaintiff reported his main stressor was "dealing with school" and continued anxiety with crowds. (R. 261). He reported his medications, Celexa and Valium, have been helpful and he has been able to deal with his school-related stressors and described his

mood as "pretty good." (Id.). Plaintiff's assessment at this time noted symptom improvement on current medication without side effects. (Id.).

In regard to consultative examinations, Plaintiff was scheduled for a physical consultative examination but never appeared for the appointment. (R. 289-96). Plaintiff's mental consultative examination in March 2011 revealed normal findings with a diagnostic impression of alcohol dependence, in partial remission and dysthymic disorder. (R. 265-68). The consultative examiner noted that Plaintiff did not appear to meet criteria for a diagnosis of major depressive disorder. (Id.). Plaintiff's Mental Residual Functional Capacity Assessment (R. 270-72) and Psychiatric Review Technique (R. 284) completed on March 28, 2011 by Dr. Philip E. Comer, a medical consultant, revealed only mild to moderate limitations in Plaintiff's work abilities.

## C. Testimonial Evidence

At the ALJ hearing held on July 12, 2012, Plaintiff testified that his biggest issues to maintaining employment were his anxiety and depression. (R. 41). He also testified regarding his neck pain and numbness in his arms. (R. 42).

In regard to education and employment, Plaintiff testified that he went to Morgantown Technical Institute for a two-year program in auto body and auto mechanics. (R. 41-42). Plaintiff explained that his neck problems "really set in" during school from the constant sitting and standing. (R. 42). After completing the training, Plaintiff attempted to apply for jobs but could not find work because he did not have a driver's license and "as far as the mechanic part…I have no feeling in my fingers." (Id.). Plaintiff explained that he last worked in 2008 after being laid off because he was in a car wreck in a company car. (R. 46).

Plaintiff further testified regarding his impairments. Plaintiff testified that his right hand is "constantly numb." (Id.). He explained that "the fluid in my neck leaks out into my spinal cord,

and that's when it just, it hurts my whole shoulder down clear to my arm." (R. 43). Plaintiff testified that he experiences constant pain in his neck but when his neck is "flared up" the pain goes from a six to a nine. (Id.). He stated that he has difficulty turning his head to the right due to his neck pain. (Id.). Plaintiff testified that he cannot lift or carry and he has difficulties reaching overhead. (R. 44).

As for his mental impairments, Plaintiff testified that he his social anxiety impacts his ability to work because he "can't be reliable." (R. 45). Plaintiff explained that when he is experiencing an anxiety attack, he "can't be around people." (Id.). He further stated that he did not have any trouble getting along with his immediate family. (R. 46). Plaintiff also discussed his history of alcohol dependence two to three years prior and noted that now rarely drinks and does not have cravings for alcohol. (Id.). Plaintiff stated that he had not lost any jobs before due to anxiety because at that time he "used alcohol the whole time…as a…crutch." (R. 47).

In regard to medications, Plaintiff stated that he takes over-the-counter Motrin for the pain. (R. 43). He explained that since his primary care doctor, Dr. Minor, moved in November 2011, he had not received any treatment for his physical conditions. (Id.). Plaintiff testified that he was also taking medication for his anxiety, which "helps a little bit." (R. 45).

Plaintiff also testified regarding his daily activities. Plaintiff explained that he lives with his parents and does not financially contribute to rent, utilities or food. (R. 44). He does not go grocery shopping. (R. 45).

Plaintiff's attorney did not cross-examine Plaintiff when given the opportunity to do so. (R. 47).

**D. Vocational Evidence**

Also testifying at the hearing was Eugene A. Czuczman a vocational expert. Mr. Czuczman characterized Plaintiff's past work as a delivery driver (medium, semi-skilled), roofer (medium, skilled), iron worker (heavy, skilled), concrete laborer (heavy, skilled) and construction worker (heavy, semi-skilled). (R. 48-49). With regards to Plaintiff's ability to return to his prior work, the ALJ asked the VE:

> Q: [A]ssume a hypothetical individual of the claimant's age, educational background, and work history, who would be able to perform a range of light work, would require a sit/stand option without breaking tasks, and would have the ability to sit for about a-half-an-hour at a time, and stand for an hour at a time, and walk for fifteen minutes at a time, could do postural movements occasionally, except could not climb ladders, ropes, or scaffolds.
>
> The work should generally permit the person to look at the work tasks without frequent or repetitive neck movements, should not be exposed to temperature extremes, wet or humid conditions or hazards, should work in a low-stress environment with no production line or assembly line type of pace, no independent decision-making responsibilities, and minimal changes in the daily work routine, should have no interaction with the general public, and no more than occasional interaction with co-workers and supervisors.
>
> Is there any work in the regional or national economy that such a person could do?
>
> A: …All right, the following are light in exertion, specific vocational preparation of 2, therefore they're unskilled: work as a collator operator 55,000 national, 115 for the region; folding machine operator 73,000 national, for the region 350; photographic machine operator 85,000 national, 875 for the region. Then again these are light, unskilled, SVP: 2, and would be a sampling.

(R. 49-50). The ALJ did not make any further inquiry of the VE at this time. (R. 50). Plaintiff's attorney then cross-examined the VE:

> Q: Mr. Czuczman, with the neck or the repetitive neck motions, can we change that instead of saying frequent…if it's less than frequent, so, occasional, would eliminate any of the jobs available?

A:    The jobs I used are monitoring a machine…As long as he's facing the machine, and seeing that papers are going through, he could get up with the sit/stand option, and load the machine. So he actually doesn't have to move his head. He can face it, and just move his body.

Q:    Okay, so the same would be true of [sic] it was less than occasional?

A:    Less than occasional, I would be worried, and I would say no.

Q:    Okay.

A:    The guy would have to have at least occasional movement.

Q:    …[N]ow if we also added into the hypothetical that reaching in all directions with the right extremity would be less than occasional. How would that impact the availability of the jobs you listed?

A:    What's the limitation about the right extremity?

Q:    Less than occasional reaching in all directions…

A:    …It would not have an effect.

Q:    Okay, now if we added in both extremities?

A:    It would…less than occasional use of both extremities, I would say that would prevent the person being successful with the job.

(R. 50-51). The VE then answered Plaintiff's attorney's question regarding customary allowance for absences, to which he explained "if they would miss more than two days a month consistently, it would not be tolerated. It would end up with an individual being fired." (R. 52). In regard to being off task, the VE testified that "[a] person who will be off-task 10 percent or greater of the time would not be tolerated." (Id.). Plaintiff's attorney had no further questions. (Id.).

The ALJ then adjourned the hearing but returned to re-examine the VE regarding consistency of his testimony with the DOT. (Id.). The ALJ asked the VE:

Q:    [W]as anything in your testimony inconsistent with anything in the DOT?

A:    No, sir, I would like to make the following two qualifications. First, the <u>DOT</u> does not address sit/stand options. That is based on my education, my experience with placing people in those types of jobs, and other reference materials; and second, the <u>DOT</u> was last revised in 1991. Therefore there lies as a guide, a combing of education, experience, and other reference materials.

Q:    Okay, then at this time we can adjourn.

(R. 52-53).

### E.  Lifestyle Evidence

On an Adult Function Report, Plaintiff stated that he experiences severe pain and numbness in his neck and left arm as well as social anxiety around crowds or people he does not know. (R. 192). In 2011, Plaintiff's daily activates included attending school from 8:00 a.m. until 2:15 p.m. five days a week. (R. 193). When attending school, Plaintiff explains that he cannot sit for more than a half an hour and has to stand up due to pain. (R. 196). He noted that his conditions affect his sleep and that he often wakes up at night due to pain. (<u>Id.</u>).

As for activities of daily living, Plaintiff reported being able to feed his cat. (R. 193). Plaintiff reported no problems with personal care. (R. 193). He noted that he does not prepare his own meals due to numbness in his arm and neck pain. (R. 194). As for housework, Plaintiff stated that he takes out the trash once a week and makes his bed daily, spending about half an hour on chores. (<u>Id.</u>). Plaintiff does not drive. (R. 195). Plaintiff reported that he does his own shopping in stores and by computer for necessities and his medication. (<u>Id.</u>). He further noted some difficulty with paying bills in a timely manner and managing a checkbook. (<u>Id.</u>). As for social activities, Plaintiff reported that he goes to school, the grocery store and to doctor appointments but that he suffers anxiety and pain. (R. 196).

In regard to his abilities, Plaintiff noted that his conditions affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, memory, complete tasks, concentrate, use hands

and get along with others. (R. 197). He stated that he was unable to lift ten pounds or sit for more than ten minutes without pain. (Id.). He reported being able to walk 1/16 of a mile before needing to stop and rest for about fifteen minutes before resuming walking. (Id.).

As for mental abilities, Plaintiff noted that he could not pay attention for long, he often does not finish what he starts, he is not good at following spoken instructions, he is "okay" at following written instructions and he does not get along well with authority figures. (R. 197-98). He further noted that he handles stress with medication, he does not handle changes in routine well and he cannot be in crowds of people or meet new people. (Id.).

## IV.     THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work…'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A) (2006). The Social Security Administration uses the following five-step sequential evaluation process to determine if a claimant is disabled:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

9

[Before the fourth step, the residual functioning capacity of the claimant is evaluated based "on all the relevant medical and other evidence in your case record . . ." 20 C.F.R. §§ 404.1520; 416.920 (2011).]

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520; 416.920 (2011). If the claimant is determined to be disabled or not

disabled at one of the five steps, the process does not proceed to the next step. *Id.*

## V.    ADMINISTRATIVE LAW JUDGE'S DECISION

Utilizing the five-step sequential evaluation process described above, ALJ Alexander made

the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.    The claimant has not engaged in substantial gainful activity since December 4, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, 416.971 *et seq.*).

3.    The claimant has the following severe impairments: history of fracture of the right talus; mild degenerative disc disease of the cervical spine and straightening of the lordotic curve of the cervical spine; anxiety, not otherwise specified; dysthymic disorder; and history of alcohol abuse/dependence (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: requires a sit/stand option without breaking task with the ability to sit for about one-half hour at a time, stand for about 1 hour a time, and

walk for about 15 minutes at a time; no more than occasional postural movements except for no climbing of ladders, ropes, or scaffolds; work should generally allow the person to look directly at the work task with no frequent or repetitive neck movements; no exposure to temperature extremes, wet or humid conditions, or hazards; a low stress environment with no production line or assembly line type of pace, no independent decision-making responsibilities, and minimal changes in the daily work routine; no interaction with the general public; and no more than occasional interaction with co-workers and supervisors.

6.       The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.       The claimant was born on September 15, 1971 and was 37 years old, which is defined as a younger individual, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.       The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.       Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from December 4, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 12-23).

## V.    DISCUSSION

### A. Standard of Review

In reviewing an administrative finding of no disability the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1968)). However, "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment…if the decision is supported by substantial evidence." Hays, 907 F.2d at 1456 (citing Laws, 368 F.2d at 642; Snyder v. Ribicoff, 307 F.2d 518, 529 (4th Cir. 1962)). In reviewing the Commissioner's decision, the reviewing court must also consider whether the ALJ applied the proper standards of law: "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

**B. Contention of the Parties**

In her Motion for Summary Judgment, Plaintiff raises only one narrow issue: that the ALJ erred by failing to properly resolve inconsistencies between the Dictionary of Occupational Titles ("DOT") and the VE's testimony, as required by Social Security Ruling 00-4p. (Pl.'s Br. in Supp. of Mot. for Summ. J. ("Pl.'s Br.") at 2, ECF No. 9). Specifically, Plaintiff alleges that:

- The ALJ failed to resolve the inconsistency between the VE's testimony that a person could look directly at the work task in both the standing and sitting positions.

- The VE failed to provide a reduction in the number of jobs due to this sit/stand option and neck limitations and the VE did not testify to the "the existence of erosion due to the sit/stand option or as a result of the neck movement limitations, and this omission should have been apparent to the ALJ."

- The VE failed to provide the <u>DOT</u> codes for jobs Plaintiff could perform and the ALJ did not resolve this inconsistency.

(Pl.'s Br. at 12, ECF No. 9). Plaintiff requests that the case "be remanded as it is not supported by substantial evidence." (Id. at 14).

Defendant, in her Motion for Summary Judgment, asserts that the decision is supported by substantial evidence and should be affirmed as a matter of law. (Def.'s Mot. at 1). Specifically, Defendant alleges that:

- The ALJ properly relied on the VE's testimony when he determined that Plaintiff could make a vocational adjustment to significant number of jobs existing in the national economy.

(Def.'s Br. in Supp. Of Def.'s Mot. for Summ. J. ("Def.'s Br.) at 7, ECF No. 11).

## C. Analysis of the Administrative Law Judge's Decision

After evaluating a claimant's residual functioning capacity based on all of the evidence in the record, the ALJ considers at step four whether the claimant can perform his past relevant work based on his RFC. 20 C.F.R. 404.1520; 416.920 (2011). If the claimant cannot perform past relevant work, the ALJ then goes to the fifth step of the sequential evaluation process to determine whether the claimant can make an adjustment to other work. <u>Id.</u> Pursuant to 20 CFR 404.1566(d) and 416.966(d), the Agency may take "administrative notice of 'reliable job information' available from various publications, including the <u>DOT</u>." SSR 00-4p. The regulations also allow the Agency to utilize vocational experts as sources of occupational evidence in certain cases. <u>See</u> 20 CFR 404.1566(e) and 416.966(e). Social Security Ruling ("SSR") 00-4p provides further guidance on identifying and resolving potential conflicts between the <u>DOT</u> and the occupational evidence provided by a VE. SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000).

SSR 00-4p provides that the occupational evidence provided by the VE "generally should be consistent with the occupational information supplied by the <u>DOT</u>." <u>Id.</u> When there is an

apparent and unresolved conflict between the VE testimony and the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." Id. at *2; see also Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) (stating that "SSR 00-4p requires the ALJ to obtain an explanation only when the conflict between the DOT and the VE's testimony is 'apparent.'"). As such, "[w]hen a [vocational expert] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that…evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000); see also Fisher v. Barnhart, 181 F. App'x 359, 366, 2006 WL 1328700, at *7 (4th Cir. May 16, 2006) (stating that an ALJ abides by SSR 00-4p when he inquires on the record whether VE testimony is consistent with the DOT). If the VE denies any conflicts when asked by the ALJ, the ALJ's duty ends. See Martin v. Comm'r of Soc. Sec., 170 F. App'x 369, 374-75, 2006 WL 509393, at *4-5 (6th Cir. Mar. 1, 2006).

A claimant may bring a VE's mistake to the ALJ's attention but "[n]othing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct." Terry, 508 F.3d at 478. Moreover, claimants "should not be permitted to scan the record for…unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." Young v. U.S. Comm'r of Soc. Sec., No. CV08-0474, 2009 WL 2827945, at *13 (W.D. La. Sept. 1, 2009) (citing Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000)).

In the present case, the ALJ gave a detailed residual functional capacity assessment that

limited Plaintiff to light work, including the following restrictions:

> a **sit/stand option** without breaking task with the ability to sit for about one-half
> (1/2) hour at a time, stand for about one (1) hour at a time, and walk for about fifteen
> (15) minutes at a time; no more than occasional postural movements except for no
> climbing of ladders, ropes, or scaffolds; work should generally allow the person to
> **look directly at the work task with no frequent or repetitive neck movements**;
> no exposure to temperature extremes, wet or humid conditions, or hazards; a low
> stress environment with no production line or assembly line type of pace, no
> independent decision-making responsibilities, and minimal changes in the daily
> work routine; no interaction with the general public; and no more than occasional
> interaction with co-workers and supervisors.

(R. 14-15) (emphasis added). At the hearing, the ALJ asked the VE the work ability of a

hypothetical individual with these restrictions. (R. 49). The VE testified that an individual with

such restrictions could perform certain unskilled jobs, light in exertion, including work as a collator

operator, folding machine operating and photographic machine operator, as a sampling. (R. 50).

In regard to inconsistencies between the VE's testimony and the <u>DOT</u>, the ALJ specifically

asked the VE:

> Q:    Was anything in your testimony inconsistent with anything in the <u>DOT</u>?
>
> A:    No, sir, I would like to make the following two qualifications. First, the
>       <u>DOT</u> does not address sit/stand options. That is based on my education,
>       my experience with placing people in those types of jobs, and other
>       reference materials; and second, the <u>DOT</u> was last revised in 1991.
>       Therefore there lies as a guide, a combining of education, experience, and
>       other reference materials.

(R. 52-53). As noted in the record, Plaintiff's attorney received the opportunity to cross-examine

the VE at the hearing. (R. 50-52). When the VE testified that there were no inconsistencies but

clarified that the <u>DOT</u> does not address a sit/stand option, Plaintiff's attorney did not inquire about

any possible conflicts between the VE's testimony and the <u>DOT</u>. The ALJ fulfilled his duty in this

instance by asking the VE whether there were inconsistencies between his testimony and the <u>DOT</u>.

<u>See</u> SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000); <u>see also</u> <u>Fisher</u>, 181 F. App'x at 366. In

addition, Plaintiff's attorney had the opportunity to cross-examine the VE regarding the alleged

inconsistencies and failed to do so. Therefore, Plaintiff should not be allowed to present alleged inconsistencies as "reversible error, when the conflict was not deemed sufficient enough to merit adversarial development in the administrative hearing." <u>Young</u>, 2009 WL 2827945, at *13.

Plaintiff now argues that the ALJ failed to properly resolve "apparent" inconsistencies between the <u>DOT</u> and the vocational expert's testimony, as required by Social Security Ruling 00-4p, and thus the case should be remanded for further consideration. (Pl.'s Br. at 11). Plaintiff argues that the inconsistencies "should have been apparent to the ALJ and required further inquiry prior to relying on [the VE's] testimony in determining Plaintiff was not disabled." (<u>Id.</u>). First, Plaintiff argues that the ALJ failed to resolve the inconsistency between the RFC, which included a sit/stand option as well as neck limitations, and the <u>DOT</u>. (<u>Id.</u> at 12). Second, Plaintiff argues that the VE failed provide for a reduction or erosion of jobs due to the sit/stand option and neck limitations and the ALJ failed to resolve this conflict. (<u>Id.</u>). Third, Plaintiff argues the VE's failure to provide <u>DOT</u> job codes should have been resolved by the ALJ but he failed to do so (<u>Id.</u>). The following sections address each of these arguments in turn:

### 1. *Inconsistency between sit/stand option and looking directly at work task.*

Plaintiff asserts that his RFC included a sit/stand option as well as neck limitations that require him to perform work that allows him to "look directly at the work task." (<u>Id.</u>). Plaintiff argues "there is [a] serious question as to how an individual could 'look directly at a work task' in both the standing and sitting positions" and that the ALJ erred by failing to address this inconsistency. (<u>Id.</u>). Defendant argues that Plaintiff's claim lacks merit because the VE "offered a specific explanation about how a person could perform the jobs if he had to 'look directly at a work task' in both the sitting and standing positions." (<u>Id.</u>).

During the administrative hearing, the ALJ's hypothetical RFC posed to the VE included

both a sit/stand option as well as a limitation that would allow the person to "look at the work tasks without frequent or repetitive neck movements." (R. 49). Plaintiff's attorney cross-examined the VE regarding this RFC and inquired regarding the imposition of requiring only occasional repetitive neck motions as part of the RFC. (R. 50). The VE then explained:

> The jobs I used are monitoring a machine…As long as he's facing the machine, and seeing that papers are going through, he could get up with the sit/stand option, and load the machine. So he actually doesn't have to move his head. He can face it, and just move his body.

(Id.). While Plaintiff seeks some further explanation, the VE provided a very specific explanation during the hearing about how a person could perform the machine monitoring jobs while looking at the work tasks without frequent (i.e., occasional) neck movements and also sitting and standing. The VE further testified that his testimony was consistent with the DOT and based on his own education, experience and reference materials. (R. 52). Moreover, other than bare assertion, Plaintiff provided no evidence of a conflict between the sit/stand option and the neck movement limitations. As such, the undersigned finds there is no apparent conflict between the DOT and the VE's testimony, including the VE's subsequent explanation, which would have required a specific resolution by the ALJ. Accordingly, the ALJ was entitled to rely on the VE's testimony and there is no legal error.

### 2. VE's failure to provide a reduction in the number of jobs or erosion due to the sit/stand option and neck movement limitations.

Plaintiff asserts that the sit/stand option and neck limitations incorporated into the RFC affects Plaintiff's "ability to perform a full range of work and reduces the occupational base of work he can perform." (Id. at 12). Plaintiff argues that the "VE did not provide any reduction in the number of jobs due to the requirement of a sit/stand option" and the VE "failed to testify to the existence of erosion due to the sit/stand option or as a result of the neck movement limitations, and this omission should have been apparent to the ALJ." (Id.). Defendant argues that Plaintiff's

second claim regarding the VE's failure to identify how Plaintiff's restrictions eroded the number of jobs available fails because "the VE testified to the numbers of jobs that existed with these specific restrictions in the hypothetical question." (Id.).

The hypothetical posed to the VE specifically included a sit/stand option as well as neck limitations: "a **sit/stand option** without breaking task with the ability to sit for about one-half (1/2) hour at a time, stand for about one (1) hour at a time, and walk for about fifteen (15) minutes at a time" and a neck movement limitation stating that "work should generally allow the person to **look directly at the work task with no frequent or repetitive neck movements**." (R. 14-15) (emphasis added). Only after considering these specific restrictions as part of the hypothetical did the VE testify to the number of jobs that existed in the national and regional economy. (R. 49-50). Moreover, Plaintiff's counsel did not object to the figures during the hearing nor ask for a reduction based on these specific limitations. (R. 50-51). The undersigned is persuaded by Defendant's explanation in her brief: "Plaintiff's counsel did not inquire whether the numbers provide would be further reduced due to the sit/stand option or the neck movement limitations, presumably because she understood that the numbers the VE identified included all of the restrictions in the hypothetical question." (Def.'s Br. at 11). Plaintiff presented no evidence that the VE ignored the restrictions in the hypothetical when listing available work in the regional and national economy that such a person could perform. Accordingly, the undersigned finds no evidence that the VE failed to account for a reduction of jobs available in the regional and national economy based on Plaintiff's limited RFC. Therefore, there is no apparent conflict between the VE's testimony and the DOT and this argument is without merit.

### 3. *The VE's failure to list **DOT** Codes when listing available jobs.*

Plaintiff asserts that the VE failed to provide the DOT codes associated with the available jobs in the regional and national economy. (Pl.'s Br. at 12-13). Plaintiff explains that the DOT

codes "would have enabled the ALJ and the plaintiff to compare the job descriptions with Plaintiff's residual functional capacity to realize potential conflicts." (Id. at 13). Thus, Plaintiff argues that the "ALJ failed to resolve the conflict, and in fact, could not have resolved the conflict between the vocational expert's testimony and the DOT without the availability of the job codes and descriptions." (Id.). Defendant argues that Plaintiff's counsel never asked the VE to provide DOT codes during the hearing and that neither the applicable regulations nor SSR 00-4p require the ALJ to obtain DOT codes for the jobs identified by a VE. (Def.'s Br. at 11).

During the administrative hearing, the VE listed specific jobs available in the regional and national economy that a person with the restrictions in the hypothetical could perform. (R. 50). The VE did not provide the accompanying DOT codes when listing the job positions. (Id.).

In general, the DOT serves as a guide or tool in determining types of occupations, occupational definitions and the maximum requirements of occupations as generally performed. SSR 00-4p, 2000 WL 1898704, at *2-3. SSR 00-4p explains that while the Agency "primarily" relies on the DOT, they also may rely on VE testimony for additional guidance. Id. at *2. Moreover, the DOT "contains information about most, but not all, occupations." Id. As such, the DOT is not binding on the Agency, but instead should be relied upon as a tool. Irelan v. Barnhart, 82 F. App'x 66, 72 (3d Cir. 2003) (citing Donahue v. Barnhart, 279 F.3d 441, 445–47 (7th Cir.2002)); see also Sawyer v. Apfel, 166 F.3d 1210 (4th Cir. 1998) (an unpublished Fourth Circuit case finding that "social security regulations do not require that the Secretary or the VE rely on classifications in the DOT.").

The undersigned cannot find any regulations, Social Security Rulings or binding authority that require the VE to list DOT job codes or require the ALJ to obtain DOT codes for jobs identified by the VE. See SSR 00-4p; 20 C.F.R. 404.1566(e), 416.966(e). Plaintiff cites to one case from the

Eastern District of Michigan holding that substantial evidence did not support the ALJ's finding at step five that the plaintiff could perform other work when the vocational expert failed to provide DOT job codes. Teverbaugh v. Comm'r of Soc. Sec., 258 F. Supp. 2d 702, 706 (E.D. Mich. 2003) (stating that the ALJ "failed to ensure there was no conflict, and there is no apparent means of otherwise determining whether, in fact, the jobs identified are ones that Plaintiff can perform (because the VE failed to provide the job codes.)"). In return, Defendant cites to four cases, including a Third Circuit case that reflect the opposite: there is no error in the VE's failure to supply the DOT codes nor in the ALJ's failure to identify a DOT number. (Def.'s Br. at 12) (citing Irelan v. Barnhart, 82 Fed. Appx. 66, 72 (3d Cir. 2003) (stating that "there is no legal basis for Irelan's argument that 'if the claimant is to adequately test the accuracy of the VE testimony, the DOT numbers must be available.'"); Ryan v. Astrue, 650 F. Supp. 2d 207, 218 (N.D.N.Y. 2009) (determining that "[t]he Court can find no error in the VE's failure to supply the DOT codes); Burgos v. Astrue, 309-CV-1216VLB, 2010 WL 3829108 (D. Conn. Sept. 22, 2010) (finding that "the ALJ's failure to identify a DOT number does not amount to error."); Mosteller v. Astrue, 5:08-CV-003-RLV-DCK, 2010 WL 5317335, at *4 (W.D.N.C. July 26, 2010)); see also Leach v. Comm'r Of Soc. Sec., 13-CV-14095-DT, 2014 WL 4794167 (E.D. Mich. Sept. 25, 2014) (stating that "courts have declined to remand in other cases where DOT codes were not provided.")).

There does not appear to be any binding authority requiring a VE to provide DOT codes during his or her testimony or requiring an ALJ to inquire as to the DOT job codes referenced during a VE's testimony. Moreover, both the Third and Fifth Circuits have found that the absence of DOT codes does not undermine an ALJ's step-five determination. See Irelan, 82 Fed. Appx. at 72; Haas v. Barnhart, 91 Fed. Appx. 942, 948 (5th Cir. 2004) (stating that the plaintiff "cites no support for his claim that the DOT numbers for positions identified by the VE must be given.").

Additionally, Plaintiff's counsel did not question the VE regarding the job codes during his testimony despite being given the opportunity for cross-examination. (R. 50). The ALJ also specifically asked if the VE's testimony was consistent with the <u>DOT</u> and the VE testified on the record that his opinions were consistent with the <u>DOT</u> with the clarification of the sit/stand option and his reliance on his education, experience placing people in jobs and other reference materials. (R. 52); <u>see</u> <u>Reider v. Astrue</u>, 07 C 7271, 2008 WL 2745958, at *14 (N.D. Ill. July 11, 2008) (finding that "[b]ecause the lack of a <u>DOT</u> code does not, standing alone, signify such a conflict, the ALJ met her burden with respect to the courier position when she asked the VE whether his testimony was consistent with the <u>DOT</u>.").

Therefore, the undersigned finds that the ALJ properly relied on the vocational evidence of work in the national and regional economy that Plaintiff could perform. In this instance, there was no apparent unresolved conflict. Accordingly, substantial evidence supports the ALJ's finding at the fifth step of the sequential evaluation process.

## VI.     <u>RECOMMENDATION</u>

For the reasons herein stated, I find that the Commissioner's decision denying the Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment (ECF No. 9) be **DENIED**, Defendant's Motion for Summary Judgment (ECF No. 10) be **GRANTED**, and the decision of the Commissioner be affirmed and this case be **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A

copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 14 day of October, 2014.

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE